**DAY-BRITE LIGHTING DIVISION, EMERSON ELECTRIC COMPANY,**
Plaintiff,

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, a Labor Organization and Its Constituent, International Brotherhood of Electrical Workers, Local No. 1028, et al.,**
Defendants.

No. EC 6939-K.

United States District Court
N. D. Mississippi, E. D.

Aug. 25, 1969.

James Hugh Ray, Tupelo, Miss., for plaintiff.

Dixon Pyles, Jackson, Miss., Adams, Long & Adams, Tupelo, Miss., Hoyt Elliott, Jasper, Ala., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

Plaintiff, a Missouri corporation and citizen of that state, instituted suit in the Chancery Court of Lee County, Mississippi, seeking injunctive and general relief against two unincorporated labor organizations, International Brotherhood of Electrical Workers, AFL-CIO and IBEW, Local No. 1028, five individual defendants who were Mississippi citizens and one individual who was a citizen of Alabama. The individual defendants were also sued as representatives of the class consisting of all members of the two labor organizations. The suit in state court alleged that upon expiration of a collective bargaining agreement between plaintiff and IBEW, Local No. 1028, defendants began engaging in certain activity to force plaintiff to enter into a new collective bargaining contract by picketing its plant at Tupelo, Mississippi, interfering with railroad and truck lines attempting to enter plaintiff's plant for doing business with plaintiff, and by committing certain acts of violence, at least one of which resulted in the arrest of nine defendant union members by Tupelo police officers when they undertook to block with their bodies the passage of a switch engine of the Gulf, Mobile and Ohio Railway Company into plaintiff's plant. Other allegations charged mass picketing at entrances to plaintiff's plant and intimidation and obstruction of common carriers, their employees and others from serving plaintiff's business. The state court issued an injunction without notice restraining defendants from any acts other than peaceful picketing to be conducted by maintaining not more than two pickets at each of the four entrances to plaintiff's plant. Defendants removed the case to federal court and have moved to dissolve the ex parte injunction. Plaintiff's motion to remand to state court is now before this court for decision.

Defendants assert the existence of federal jurisdiction upon two grounds: (1) diversity of citizenship; and (2) the existence of a federal question. The amount in controversy undeniably exceeds the jurisdictional minimum as the value of the rights sought to be protected by plaintiff, including the protection of its plant and business relations, greatly exceeds the sum of $10,000.

It is evident that the suit is not maintainable in federal court because of diversity of citizenship. Even if the suit, as urged by defendants, is treated as a class action as to defendant labor organizations and citizenship of defendants is to be determined only by that of the individuals designated for the class, the fact is that five individual parties who have been properly joined and served as defendants are Mississippi citizens. In considering removability, it is not enough that there simply exists a complete diversity of citizenship, but it must also appear that none of the defendant parties in interest, properly joined and served, is "a citizen of the State in which such action is brought". The concluding sentence of 28 U.S.C. § 1441(b) plainly restricts diversity jurisdiction, in removal cases, to a nonresident defendant or defendants. A clear discussion on this point appears in 1A Moore's Federal Practice, 0.161(1), p. 527 as follows:

"If a civil action could be maintained originally in the federal court on the basis of diversity as discussed above, then subsection (a) of § 1441 standing alone would warrant removal of such an action when brought in the

state court, for § 1441(a) keys removal to original jurisdiction. But subsection (b) of § 1441 introduces a qualifying principle. Even though diversity exists so that a federal court would have original jurisdiction of a suit, § 1441(b) is limiting in character in that it makes the state action removable 'only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.' *In this situation a citizen who is sued in the courts of his state is not given an option to shift to the federal forum."* [1] (Emphasis added)

The Fifth Circuit Court of Appeals in Monroe v. United Carbon Co., 196 F.2d 455 (5 Cir. 1952), expressly alludes to the fact that § 1441(b) is "an instance where the removal jurisdiction of the federal court is narrower than its original jurisdiction."

██ Defendants urge that in a class action the concluding sentence of 28 U.S.C. § 1441(b) is not applicable. They are utterly mistaken in their view; there is no warrant in the law for such a holding, and the Fifth Circuit Court of Appeals, in cases relied upon by defendants, has, in fact, held to the contrary. For example, in Lowry v. International Brotherhood, etc., 259 F.2d 568 (5 Cir. 1958), Judge Rives, speaking for the Court said as follows:

"If the association is sued or sues as an entity under Rule 17(b), citizenship is determined by the individual members; if the association is a class party under Rule 23(a) [conceded to be the situation here], the representatives named must have complete diversity from the other side."

In *Lowry,* federal jurisdiction was lacking since the labor organization was not sued as a class party but as a separate entity, and citizenship had to be determined by looking at that of all of the members of the union, some of whom were Mississippi citizens. Thus removability was defeated. In the case at bar, even though the labor organizations are sued as a class party, removability is defeated on the ground of diversity of citizenship because some of the representatives of the class are citizens of Mississippi. Calagaz v. Calhoon, 309 F. 2d 248 (5 Cir. 1962), strongly relied upon by defendants does not support their position. That case holds, consistently with *Lowry,* that where a labor union is sued as a class party, citizenship is to be determined by looking only at the named representatives. In an action brought originally in federal court by Calagaz, a citizen of Alabama, on behalf of himself and others, against defendants who were nonresidents of Alabama, federal jurisdiction was held to exist, since there was complete diversity. The limitation on removability, as described above, was not in any way involved. The only significant difference, as concerns federal diversity jurisdiction, between suing a labor organization as an entity or in a class action is that in the former instance the citizenship of an unincorporated labor union is that of each of its members, United Steel Workers of America v. R. H. Bouligny, Inc., 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), while in the latter case, involving a class action, citizenship of such an association is deter-

[1]. 28 U.S.C. § 1441 provides as follows:

"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall · be removable *only if none* of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." (Emphasis added.)

mined by reference to the representatives named in the case. Lowry v. International Brotherhood, etc., supra; Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 148 F.2d 403 (4 Cir. 1945). See Rule 17(b) and 23(a) (1) F.R.Civ.P. To adopt defendants' reasoning that in any case where, due to its nature as a class action, the suit is removable if only complete diversity of citizenship exists would be to effectually repeal the concluding sentence of § 1441(b). But the restriction may not be ignored, nor its fairness questioned by this court. It is enough to conclude that plaintiff might have brought this suit originally in federal court as a class action without having that jurisdiction defeated by the existence of one or more Missouri members of the union, and also, as the action has been initiated by plaintiff in state court, defendants would have had the right of removal on ground of citizenship diversity if no named defendant was a Mississippi citizen. This recognition gives full effect to the operation of the class action rule as it relates to federal diversity of citizenship; and no more than that is required or even suggested by the federal cases.

However, defendants' assertion of federal jurisdiction arising from existence of a federal question is well founded. The district courts have jurisdiction over actions arising under "any Act of Congress regulating commerce", 28 U.S.C. § 1337. The Labor Management Relations Act (LMRA), 29 U.S.C. § 141 et seq., constitutes such a federal enactment. § 187 of that Act provides that it shall be unlawful "in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b) (4) of this title", and that anyone injured in his business or property by reason of any such violation may sue in any district court of the United States without respect to the amount in controversy and "shall recover the damages by him sustained * * *." A suit of this type is known as a § 303 action.

To determine the presence of a federal question, it must appear from allegations disclosed upon the face of plaintiff's suit, unaided by defendants' answer or petition for removal, that the claimed right or immunity will be either supported or denied depending upon the construction or effect given by the court to the Constitution or laws of the United States. Gully v. First National Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). "The federal question must clearly appear on the face of the declaration or complaint as an essential and integral part of plaintiff's statement of his own case, not in anticipation of a defense that may be interposed by an adversary party." Armstrong v. Alliance Trust Co., 126 F.2d 164, 167, (5 Cir. 1942). Where a federal claim has been asserted by plaintiff, federal-court jurisdiction attaches regardless of plaintiff's realization that he had stated a federal claim, or that he had entertained an intent to seek relief based upon state law. Francis H. Leggett & Co. v. O'Rourke, D.C., 237 F.Supp. 561 (1964); S. & H. Grossinger, Inc. v. Hotel & Restaurant Employees, etc., D. C., 272 F.Supp. 25 (1967); Table Talk Pies of Westchester v. Strauss, D.C., 237 F.Supp. 514 (1964). Thus it is immaterial that plaintiff may fail to refer by name to the federal statute on which his claim may be based or that he may seek certain relief grantable only in a state, and not federal, court.

Examining the allegations of the Chancery suit, it seems clear that the activities alleged to have been committed by the defendant labor organizations are arguably within the purview of § 8(b) (1) and (4) (ii) (B) of LMRA. At this juncture, the narrow issue is not whether the labor organizations have, in fact, committed proscribed unfair labor practices but only whether their activities may conceivably be considered unfair labor practices, forming the basis of a § 303 action by plaintiff for damages. S. & H. Grossinger, Inc. v. Hotel Employees, supra; Francis H. Leggett Co. v. O'Rourke, supra. Removal jurisdic-

tion, therefore, is not to be defeated because the court may ultimately hold against plaintiff in a § 303 action for damages by reason of the nature of the activities complained of. Bedford-Nugent Corp. v. Chauffeurs, Teamsters and Helpers, Local Union No. 215, etc., 7 Cir., 358 F.2d 21 (1966).[2] In this case plaintiff alleges that it, a Missouri corporation, has a branch operation at Tupelo, Mississippi, known as Day-Brite Lighting Division, where it manufactures lighting fixtures and employs approximately 600 persons, and at which plant it is necessary to ship and receive goods by rail and truck common carriers (Complaint ¶¶ 1, 17, 21, 24). If true, these allegations set forth a controversy affecting interstate commerce.

By plaintiff's suit, defendant labor organizations, bargaining agent for electrical workers at the plaintiff's plant, upon expiration of collective bargaining agreement covering wages, hours and working conditions, allegedly undertook to force plaintiff to make a new collective bargaining agreement with IBEW Local 1028 by obstructing and interfering with rights of plaintiff, its employees and suppliers (¶ 19); that on June 12, 1969, certain union members prevented a GMN&O switch engine from entering plaintiff's plant by obstructing the railroad track (¶ 21); and again on June 16 prevented another switch engine from entering plaintiff's plant when 12 of the pickets blocked the train's passage with their bodies and were arrested by Tupelo officers (¶ 24); that on June 16, 1969, defendant union members blocked the passage of a Campbell 66 Express Company truck, causing the truck driver to have to use his vehicle to push the pickets aside (¶ 21); and again on the same date they assaulted the driver of Merchants Truck Line, a common carrier, seeking to enter plaintiff's plant, by opening the truck door and attempting to drag the driver therefrom and also by assaulting the driver of another motor vehicle seeking to enter plaintiff's plant and inflicting bodily injury upon him (¶ 23); that defendants continued to obstruct plaintiff and others in the conduct of their lawful business affairs by gathering at gate entrances in large masses, preventing common carriers and others from serving plaintiff (¶ 25); further that activities of the labor unions were to coerce and intimidate plaintiff, its employees and their families and threatened to commit injury to the persons and property of plaintiff and others serving plaintiff (¶ 26); and finally that the acts violate the right of all citizens to work, irrespective of their affiliation or nonaffiliation with a union (¶ 27).

■ These allegations, if true, appear to constitute unfair labor practices in two respects, namely, (a) coercing plaintiff's non-union employees in the exercise of their industrial rights, and (b) engaging in secondary boycott with third parties.[3]

---

2. In *Bedford-Nugent,* the jurisdiction of the district court *was upheld* in its conclusion that the activities of the labor organizations constituted protected primary activity and not secondary activity proscribed by § 8(b) (4).

3. 29 U.S.C. § 158(b) (1) and (4) (ii) (B), defining unfair labor practices, read as follows:
    "(b) It shall be an unfair labor practice for a labor organization or its agents—
    (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title;
    * * *

\* \* \* \* \*
    (4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
    \* \* \* \* \*

Thus, the activities which plaintiff has alleged against defendant labor organizations rest upon federal law stemming from passage of the National Labor Relations Act, concerning which federal, and not state, interpretation governs; and even if state law may be resorted to for the purpose of finding the rule that will best effectuate federal labor policy, the state law so applied is absorbed into and becomes a part of federal law. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Avco Corp. v. Aero Lodge, IAM and AW, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In *Avco*, it was expressly held that rights controlling a § 301 action involving damage suits for violations of contract between an employer and a labor union rests wholly upon federal law, justifying removal of the action which the employer began in state court. See Avco Corp. v. Aero Lodge No. 735, etc., District Court Opinion 263 F.Supp. 177 (1966), Circuit Court of Appeals Opinion 376 F.2d 337 (6 Cir. 1967), and U. S. Supreme Court Opinion, supra. Similarly, facts alleged in an action by an employer claiming damage by labor union organizations because of their activities which appear, on their face, to be proscribed unfair labor practices, and falling within the purview of a § 303 action, are inmeshed in federal law providing what activity is and what activity is not permitted for a labor organization.

Suits of this type have been usually regarded as removable to federal court as § 303 actions. Grossinger, Inc. Hotel, supra; Leggett v. O'Rourke, supra, Direct Transit Lines, Inc. v. Local Union No. 406, IBT (W.D.Mich.S.D.1952), 21 Labor Cases 66,774; Pocahontas Terminal Corp. v. Portland Building & Construction Trade Council, D.C., 93 F.Supp. 217 (1950); S. E. Overton Co. v. International Brotherhood, etc., D.C., 115 F. Supp. 764 (1953). A contrary case is Rubinstein Bagels v. Laskowitz, D.C., 268 F.Supp. 920 (1967), which this court declines to follow because of the unwisdom of trying to determine, on bare pleadings of a plaintiff, delicate and fine distinctions between protected primary activity and unfair labor practices such as proscribed secondary boycott. In any event, this court cannot conclude as a matter of law that the activities of the labor organizations are clearly outside the scope of those activities which Congress has made actionable in a § 303 action as unfair labor practices. *Bedford-Nugent Corp.*, supra, cited by plaintiff in support of its position, illustrates the necessity for taking proof to be able to conclude whether or not acts of labor organizations complained of constitute protected primary activity or secondary activity proscribed by the federal statutes, thus being an example of an exercise of *federal court jurisdiction.*

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;"

29 U.S.C. § 157 referred to in (b) (1) above reads as follows:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, *and shall also have the right to refrain from any or all of such activities* except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158 (a) (3) of this title." (Emphasis added)

■ Plaintiff's argument that it seeks injunctive relief alone, and not damages, and thus removability is defeated is no longer valid. *Avco Corp.,* supra. In fact, the state court complaint contains a prayer for general relief, which on the facts pleaded would authorize an award of damages. Rule 54 (c), F.R.Civ.P.; Publishers' Association of New York City v. New York Newspaper Printing Pressmen's Union Number Two, D.C., 246 F.Supp. 293 (1965); *Avco Corp.,* supra, District Court Opinion, 263 F.Supp. 177. If the prayer for general relief were disregarded and the state court suit deemed to seek only an injunction, we agree that this "is a distinction without a difference," as pointed out in Oman Construction Co. v. International Brotherhood of Teamsters, etc., D.C., 263 F.Supp. 181 (1966). The limitation imposed upon federal injunctive power by the Norris-LaGuardia Act, 29 U.S.C. § 101, is not to be confused with subject matter jurisdiction otherwise vested in the district court. Crestwood Dairy, Inc. v. Kelley, D.C., 222 F. Supp. 614 (1963).

■ Finally, plaintiff urges that since the state court injunction was proper under the police power of the state because of the pleaded acts of physical violence, intimidation and coercion, the case should be remanded to the state court and jurisdiction not assumed here. It is true that under certain situations involving marked and prolonged physical violence, mass picketing, intimidation and coercion, the jurisdiction of the National Labor Relations Board *to prevent* such unlawful conduct has not displaced the jurisdiction of state injunctive power. United Auto, A. A. I. W. v. Wisc. Employment Relations Board, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162; Youngdahl v. Rainfair, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151. Those cases involve the review by the United States Supreme Court of state court decisions awarding injunctive relief, which was held to be appropriate. However, in a removal case, such as here, the issue is not one of exclusive jurisdiction, as being either in National Labor Relations Board or in a state tribunal, but one of concurrent jurisdiction in a suit for damages against a labor organization for unfair labor practices maintainable in either a state or federal court. If concurrent jurisdiction exists, the case is removable to district court, as subject matter forming the basis of a § 303 action irrespective of allegations of violence and unlawful conduct on the part of defendant labor organizations. Removal jurisdiction is defeated only when it clearly appears that the conduct of the labor organizations sued in state court is distinctly and altogether outside the scope of the actionable conduct for which damages may be recovered in a § 303 action.

■ Federal jurisdiction being present, this court is required to dissolve the ex parte state court injunction which issued in a labor dispute affecting interstate commerce. § 4 of the Norris-LaGuardia Act so requires. § 4, 47 Stat. 70, 29 U.S.C. § 104. The state court injunction must be dissolved, not on the ground of any inherent unlawfulness but because of paramount federal labor policy, Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440, and *Avco Corp.,* Supreme Court Opinion, supra. Thus damages are not allowable to defendants upon this dissolution, and it is without prejudice to the right of plaintiff to obtain federal injunctive relief, upon an evidentiary hearing, after a satisfactory showing of statutory conditions making that relief appropriate, as provided by § 7 of the Norris-LaGuardia Act. § 7, 47 Stat. 71, 29 U.S.C. § 107. Although the injunction has been dissolved, defendants are not thereby entitled to a dismissal of the action which necessarily remains for trial, on the claim of damages against defendant labor organizations because of allegedly unfair labor practices.

An order will accordingly be entered this date.