**BROWN & SHARPE MANUFACTURING COMPANY**

v.

**ALL the INDIVIDUAL MEMBERS OF LODGES 1088 AND 1142 OF DISTRICT NO. 64 OF the INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, as a class, et al.**

Civ. A. No. 82–0111.

United States District Court,
D. Rhode Island.

March 19, 1982.

Powers & McAndrew, Inc., Providence, R. I., for plaintiff.

Raul L. Lovett, Aram Schefrin, Providence, R. I., for defendants.

## MEMORANDUM AND ORDER

PETTINE, Chief Judge.

This action arises out of a labor dispute between Brown & Sharpe Manufacturing Company and its employees represented by the local lodges of the International Association of Machinists and Aerospace Workers, defendants in this action. Brown & Sharpe, plaintiff in this action, is a Delaware corporation with its main place of business at its plant in North Kingstown, Rhode Island. On October 19, 1981, the labor agreement between plaintiff and the union expired, and defendants began a strike against plaintiff. As part of this labor action, defendants proceeded to picket the North Kingstown plant.

On February 22, 1982, plaintiff filed an action for damages and injunctive relief in Providence County Superior Court, charging defendants with mass picketing of the North Kingstown plant. This picketing, according to the complaint, interfered with the ability of employees of Brown & Sharpe, as well as of other persons and employees of other corporations, to enter and leave the North Kingstown plant. The complaint charges that this picketing has been accompanied by violent acts, including the hurling of rocks, bolts and other mis-

siles, resulting in damage to the property of plaintiff and its employees. Plaintiff also sought a temporary restraining order enjoining defendants from engaging in the acts alleged in the complaint.

Before the Superior Court could act on the motion requesting a temporary restraining order, defendants filed a petition for removal in this Court. The Superior Court correctly suspended its proceedings on the plaintiff's motion for temporary relief. 28 U.S.C. § 1446(e). The matter is now before me on plaintiff's motion to remand to the state court on the ground that this Court lacks subject-matter jurisdiction over the complaint.

■ I begin by recognizing "the fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). In non-maritime actions involving only private parties, federal jurisdiction is limited to two categories: diversity jurisdiction and federal question jurisdiction. Diversity jurisdiction is not available here because plaintiff and many of the defendants are citizens of Rhode Island. If federal jurisdiction exists in this action, it must be premised on the existence of a federal question.

■ In determining the existence of a federal question, courts apply the well-pleaded complaint rule of *Louisville & Nashville Railroad v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). This rule states that "it must appear on the face of the complaint that resolution of the case depends upon a federal question." *Brough v. United Steelworkers,* 437 F.2d 748, 749 (1st Cir. 1971). Federal issues appearing only in the answer or petition for removal do not support federal question jurisdiction. *Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1974). The question is whether plaintiff's complaint is phrased solely in terms of state common law. Although it nowhere refers to federal law, defendants nevertheless contend that the complaint, at

least in part, states a claim arising under the Labor Management Relations Act, 29 U.S.C. §§ 151–168 (the "LMRA").[1]

█ Defendants premise jurisdiction on 28 U.S.C. § 1337 and LMRA § 303, 29 U.S.C. § 187.[2] Section 1337 gives district courts original jurisdiction of actions "arising under any Act of Congress regulating commerce...." The LMRA is such an act. *S. & H. Grossinger, Inc. v. Hotel and Restaurant Employees*, 272 F.Supp. 25, 28 (S.D. N.Y.1967).[3] Section 187 gives aggrieved individuals a right to bring an action in district court for the violation of 29 U.S.C. § 158(b)(4).[4] 29 U.S.C. § 158(b)(4) provides in pertinent part that it is an unlawful labor practice for a labor union or its agents

(II) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

\* \* \* \* \* \*

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person.... *Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing.

Defendants contend that plaintiff has alleged facts which state a claim under § 187 for violation of § 158(b)(4)(B). Defendants point specifically to paragraph 11 of the complaint which states:

1. Defendants implicitly assume that the existence of a federal claim preempts any existing state law claim. If this were not so, plaintiff would be allowed to pursue its state law claim in state court, because plaintiff is master of its own suit and may select the theory under which the suit proceeds. *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). Assuming that the state law claim was preempted, preemption generally enters the case as a defense. *United Mine Workers v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *First National Bank of Aberdeen v. Aberdeen National Bank*, 627 F.2d 843, 850–53 (8th Cir. 1980). *See* Wright, Miller & Cooper, 14 *Fed. Prac. & Proc.* § 3722, 1981 Supp. at 172. However, the Supreme Court, in *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), permitted removal of a state law claim based on a labor contract on the ground that state labor law was preempted in the area of labor contracts. The law on the removability of preempted state law claims is currently in disarray. *See* Wright, Miller & Cooper, *supra* at 173–175, discussing *Federated Dept. Stores, Inc. v. White*, 452 U.S. 394, 101 S.Ct. 2424, 2427 n.2, 69 L.Ed.2d 103 (1981). In light of the disposition of the present case, it is unnecessary to decide whether the *Avco* holding shall be extended to state labor law claims not based on labor contracts.

2. Defendants also cite 29 U.S.C. § 160(j) and 29 U.S.C. § 107 as sources of jurisdiction. Section 160(j) permits the National Labor Relations Board ("NLRB") to request from a district court an injunction to restrain violations of the labor laws. Private parties may not invoke this section. *Amalgamated Clothing Workers v. Richman Bros.*, 348 U.S. 511, 517, 75 S.Ct. 452, 456, 99 L.Ed. 600 (1955). Section 107, which is part of the Norris-LaGuardia Act, limits the power of federal courts to issue injunctions in actions involving labor disputes. It does not itself confer jurisdiction over labor disputes to federal courts. *Brown v. Coumanis*, 135 F.2d 163, 164 (5th Cir. 1943).

3. 28 U.S.C. § 1337 alone does not provide federal question jurisdiction. Litigants ordinarily must utilize the enforcement mechanism established by the LMRA—original jurisdiction in the NLRB with appeals lying in the courts of appeals. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). 28 U.S.C. § 1337 gives district courts original jurisdiction in cases involving labor contracts, *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 561–62, 88 S.Ct. 1235, 1237–38, 20 L.Ed.2d 126 (1968), or secondary activity. 29 U.S.C. § 187.

4. (a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

(b) Whoever shall be injured in his business or property by reason or [sic] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

29 U.S.C. § 187.

11. The defendants and other persons acting in concert with them or in their interest, by mass picketing of the entrances to plaintiff's North Kingstown plant, and by acts of violence including hurling rocks, bolts and other missiles, and strewing tacks at the entrances to said plant, have attempted to prevent and have prevented employees of persons and corporations other than the plaintiff from entering upon or conducting business at said North Kingstown plant and from entering or leaving the North Kingstown plant.

Defendants contend that the facts alleged in this paragraph constitute unlawful secondary activity barred ·by §§ 158(b)(4)(B) and 187.

■ The gist of defendants' argument is that the picketing at the North Kingstown plant constitutes a violation of § 158(b)(4)(B) because employees of neutral employers are prevented from entering and conducting business at the plant. It is ironic that a labor union is here characterizing picketing at a primary employer's plant as unlawful secondary activity. Defendants do not admit, however, that their primary picketing violates § 158(b)(4)(B). Instead, they contend that their activities "arguably" constitute unfair labor practices, and therefore come within the scope of federal question jurisdiction. Defendants cite four cases as support for their proposition. *Day-Brite Lighting Division v. International Brotherhood of Electrical Workers*, 303 F.Supp. 1086 (N.D.Miss.1969); *S. & H. Grossinger, Inc. v. Hotel & Restaurant Employees*, 272 F.Supp. 25 (S.D.N.Y.1967); *Francis H. Leggett & Co. v. O'Rourke*, 237 F.Supp. 561 (S.D.N.Y.1964); *Table Talk Pies v. Strauss*, 237 F.Supp. 514 (S.D.N.Y.1964). Six courts have taken an opposing stance. *Donlin Sportswear, Inc. v. Amalgamated Clothing & Textile Workers*, 474 F.Supp. 627, 628 (E.D.Tenn.1979); *Woodland Nursing Home v. District 1199, National Union of Hospital Health Care Employees*, 91 LRRM 3003, 3004 (S.D.N.Y.1975); *666 Cosmetics, Inc. v. Davis*, 347 F.Supp. 389, 391–92 (S.D.N.Y.1972); *Dow Chemical Co. v. District 50 Allied & Technical Workers*, 315 F.Supp. 427, 429 (D.Colo.1970); *J. Landowne Co. v. Paper Box Makers*, 278 F.Supp. 339, 341 (E.D.N.Y.1967); *Rubinstein Bagels v. Laskowitz*, 268 F.Supp. 920, 922 (S.D.N.Y. 1967).

The removability of actions brought by employers to halt union picketing is an important question in the field of labor relations due to the limitations placed on federal courts' injunctive power by the Norris-LaGuardia Act. Yet it is one of the curiosities of this question that guidance from higher courts is unavailable. Removal orders are not appealable, and these cases rarely proceed to final judgment. Thus my research has failed to disclose any decisions by a court of appeals on the removability of a state law claim similar to the one at issue here. Without appellate instruction, it is not surprising that the decisions of the district courts are in disarray. Nevertheless, I have been able to reach the conclusion that there is no federal question present in this case.

First, examination of the complaint reveals that the allegations are not sufficient to make out a claim under § 187. One of the necessary elements of a violation of § 158(b)(4)(B) is that the coercion of persons engaged in commerce must be with "an object" of "forcing or requiring any person to cease ... dealing in the product of any other producer, ... or to cease doing business with any other person, or forcing or requiring any other person to recognize or bargain with a labor organization...." 29 U.S.C. § 158(b)(4)(B). Plaintiff has simply not alleged one of these objectives in its complaint. If plaintiff brought the complaint in this Court, and refused to amend its pleading to charge an unlawful objective, I would be forced to dismiss the complaint. Certainly I cannot permit removal of this case, over plaintiff's objection, and then require plaintiff to amend its complaint so that the jurisdiction of this Court is perfected. Faced with a similar failure to allege an unlawful objective, a court in this Circuit remanded the action to state court. *H. N. Thayer Co. v. Binnall*, 82 F.Supp. 566 (D.Mass.1949). *Compare Table*

*Talk Pies v. Strauss*, 237 F.Supp. 514, 516 (S.D.N.Y.1964) (plaintiff's state court complaint alleged an unlawful objective).

I need not rest on this technical ground alone. Plaintiff's complaint is concerned solely with picketing activities at the site of plaintiff's plant. In 1951, the United States Supreme Court held that the necessary by-product of these activities—inducement of neutral employees not to enter the plant—did not constitute a violation of the predecessor of § 158(b)(4)(B). *NLRB v. International Rice Milling Co.*, 341 U.S. 665, 71 S.Ct. 961, 95 L.Ed. 1277 (1951).

In 1959, Congress amended this section in the Landrum-Griffin Act, Pub.L. 86–257, § 704(a), 73 Stat. 525 (1959). Prior to the amendment, the section had made unlawful an objective to encourage "concerted" refusals to deal. The statute thus required an objective to induce at least two neutral parties to refuse to deal with the primary employer. The 1959 amendment dropped the word "concerted", but added the proviso: *"Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing . . . ." 29 U.S.C. § 158(b)(4)(B). The Supreme Court soon had an opportunity to interpret this proviso:

> The proviso was directed against the fear that the removal of "concerted" from the statute might be interpreted so that "the picketing at the factory violates section 8(b)(4)(A) because the pickets induce the truck drivers employed by the trucker not to perform their usual services where an object is to compel the trucking firm not to do business with the * * * manufacturer during the strike." Analysis of the bill prepared by Senator Kennedy and Representative Thompson, 105 Cong.Rec. 16589.

*Local 761, International Union of Electrical Radio & Machine Workers*, 366 U.S. 667, 681, 81 S.Ct. 1285, 1293, 6 L.Ed.2d 592 (1961).

This language was not followed by all courts faced with petitions for remand. Thus, one court found that primary picketing directed at discouraging deliveries by neutral parties only became an unfair labor practice after 1959. *S. & H. Grossinger, Inc. v. Hotel & Restaurant Employees*, 272 F.Supp. 25, 29 n.2 (S.D.N.Y.1967). Any doubts as to the meaning of the proviso should have been settled by *National Woodwork Manufacturers Association v. NLRB*, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). Throughout the opinion, the Court emphasized that § 158(b)(4)(B) was intended to prohibit only secondary activity, not primary activity. In particular, the Court said that the proviso to § 158(b)(4)(B) made "clear that the deletion [of concerted] was not to be read as supporting a construction of the statute as prohibiting the incidental effects of traditional primary activity . . . ." *Id.* at 632, 87 S.Ct. at 1261.[5] *Accord, NLRB v. Enterprise Association of Pipefitters*, 429 U.S. 507, 510, 97 S.Ct. 891, 894, 51 L.Ed.2d 1 (1977); *Huber & Antilla Construction v. Carpenters Local 740, United Brotherhood of Carpenters*, 659 F.2d 1013, 1017 (9th Cir. 1981).

Notably, only one of the decisions cited by defendants was decided after the 1967 decision in *National Woodwork Manufacturers*; the court rendering that decision neglected to mention *National Woodwork Manufacturers*. *Day-Brite Lighting Division v. International Brotherhood of Electrical Workers*, 303 F.Supp. 1086 (N.D.Miss. 1969). Courts considering *National Woodwork Manufacturers* have held that picketing at the primary employer's plant does not constitute a violation of 29 U.S.C.

---

**5.** The term "incidental effects" is troublesome. A neutral party whose business depended upon continuing to deal with the primary employer would not view the ruination of his business by an effective picket line at the primary employer's plant as "incidental". A close reading of *National Woodwork Manufacturers* has convinced me that the effect on a neutral party is

"incidental" if the union's main objective is to put pressure on the primary employer. "Thus, however severe the impact of primary activity on neutral employers it [is] not thereby transformed into activity with a secondary objective." *National Woodwork Manufacturers*, 386 U.S. at 627, 87 S.Ct. at 1259.

§ 158(b)(4)(B). *E.g., Donlin Sportswear, Inc. v. Amalgamated Clothing & Textile Workers,* 474 F.Supp. 627, 628 (E.D.Tenn. 1979); *666 Cosmetics, Inc. v. Davis,* 347 F.Supp. 389, 391–92 (S.D.N.Y.1972). I agree with these courts and therefore remand the action to Providence County Superior Court.

Plaintiff has requested an award of fees in connection with the removal petition. The only costs plaintiff has incurred are attorney's fees. These may only be awarded when the petition is brought in bad faith. *Peltier v. Peltier,* 548 F.2d 1083, 1084 (1st Cir. 1977). Although I have dismissed the removal petition, I am unable to find that it was brought in bad faith. Therefore, I deny costs.

It is hereby ordered:

1. The petition for removal is dismissed and the cause remanded to Providence County Superior Court; and

2. Plaintiff's motion for an award of costs is denied.