**NATIONAL MARITIME UNION, Plaintiff-Appellant Cross-Appellee,**

v.

**AQUASLIDE 'N' DIVE CORPORATION, Defendant-Appellee Cross-Appellant.**

**NATIONAL MARITIME UNION, Plaintiff-Appellant,**

v.

**AQUASLIDE 'N' DIVE CORPORATION, Defendant-Appellee,**

v.

**Daniel GARZA, Humberto Garcia and Baldemar Aquirre, Appellants.**

Nos. 83–2313, 83–2391.

United States Court of Appeals, Fifth Circuit.

Aug. 6, 1984.

E. Dale Robertson, J.A. Magallanes, Brownsville, Tex., for Nat. Maritime Union.

R. Glenn Jarvis, Mark A. Schwarz, Mark A. Twenhafel, McAllen, Tex., Eduardo Rodriguez, Brownsville, Tex., for Aquaslide N Dive Corp.

Before GARZA, GARWOOD and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The National Maritime Union, representing workers at Aquaslide's Brownsville facility, struck Aquaslide. The facility remained open, and there was tension between the striking workers and those workers who continued on the job. First the NMU and then Aquaslide filed complaints in the district court seeking preliminary injunctions against alleged acts of harassment and other misconduct. Jurisdiction was alleged under the Norris-LaGuardia Act, 29 U.S.C. §§ 101 et seq., 107, and under the pendent jurisdiction of a federal court hearing claims concerning a labor dispute. After a hearing, the court issued a preliminary injunction enjoining both parties from committing certain belligerent acts.

Each side soon filed motions to show cause why the other should not be held in contempt for violating the terms of the preliminary injunction. A hearing was held, and all parties agreed to treat the motions as civil contempt proceedings and to waive jury trial.

The district court pushed aside disputes over obscene language at the strike site, concluding that this violation did not warrant the imposition of monetary sanctions against either party. More seriously, the court heard about incidents in which strikers had pelted workers' automobiles with rocks, causing $733.57 in property damage for which Aquaslide reimbursed its employees. Finding that the national union was chargeable with the acts of its local officers and members, the court imposed a compensatory fine against NMU of $733.57 and attorneys' fees and costs of $9550.45. The court also amended its preliminary injunction to prohibit explicitly various forms of conduct conducive to violent confrontations at the strike site.

Continued confrontations at the strike site led Aquaslide to file a second motion to show cause why three NMU members—Garcia, Aguirre, and Garza—should not be held in contempt for continuing to violate the terms of the preliminary injunction. Though the motion was treated as a criminal contempt proceeding, respondents' request for a jury trial was denied by the district judge with an assurance that the punishment in the event of conviction would not exceed six months imprisonment. Garcia, Aguirre, and Garza were convicted of contempt and sentenced to 160 days imprisonment, which sentence was probated on condition that the respondents stay away from the strike site for 160 days. The court also amended further its preliminary injunction to specify the permitted placement and conduct of strikers picketing the Aquaslide plant.

The NMU appeals from the imposition of the compensatory fine and attorney fee award. Garcia, Aguirre, and Garza appeal from their criminal contempt convictions. Aquaslide cross-appeals seeking a larger award of attorneys' fees. We reverse the judgment against the NMU for lack of jurisdiction, concluding that the Norris-LaGuardia Act is not a jurisdiction creating statute; and we reverse the convictions of

Garcia, Aguirre, and Garza, for denial of their demanded right to a jury trial.[1]

## I

■ The NMU challenges the district court's subject matter jurisdiction to issue the preliminary injunction governing the parties' conduct at the strike site. That court took jurisdiction after considering the five elements established by 29 U.S.C. § 107 as prerequisites to the issuance of an injunction in a case growing out of a labor dispute.[2]

Section 107, however, was not intended to expand federal jurisdiction in labor cases, but rather to limit the circumstances under which an injunction may be issued in those cases where the federal court already has jurisdiction by virtue of some federal question or diversity; § 107 does not itself introduce a federal question into a dispute that would otherwise be governed exclusively by state law. *Brown v. Coumanis*, 135 F.2d 163 (5th Cir.1943); *Brown & Sharpe Mfg. Co. v. All the Individual Members of Lodges 1088 and 1142, etc.*, 535 F.Supp. 167, 169 n. 2 (D.R.I.1982).

■ Our holding in *Brown v. Coumanis* controls this case, for we stated there that the Norris-LaGuardia Act

does not undertake to establish for employers any new substantive rights, nor put within the protection of federal courts all labor disputes, even though the conditions of the Act are met. Its purpose is not to enlarge federal jurisdiction, but, in the matter of using injunctions, to restrict it.... The Norris-LaGuardia Act does not vest power in a court of the United States to do anything it could not previously have done.

135 F.2d at 164 (footnote and citations omitted). Thus, federal jurisdiction must be established by reference to some federal constitutional or statutory right of action. Thereafter, having taken subject matter jurisdiction over the dispute, the federal court must look to Norris-LaGuardia to determine the scope of its injunctive power. *See, e.g., Procon, Inc. v. Wukasch*, 526 F.Supp. 597 (E.D.Tex.1981) (jurisdiction established by diversity of citizenship); *Local 553, Transport Workers Union of America v. Eastern Air Lines, Inc.*, 544 F.Supp. 1315 (E.D.N.Y.), *aff'd*, 695 F.2d 668 (2d Cir.1982) (jurisdiction established under the Railway Labor Act); *Day-Brite Lighting Div., etc. v. International Bhd. of Elec. Workers*, 303 F.Supp. 1086 (N.D.Miss.1969) (jurisdiction established under the Labor Management Relations Act).

1. Reversal of the judgment against the NMU moots Aquaslide's cross-appeal.

2. In pertinent part, 29 U.S.C. § 107 provides:
 No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—
 (a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

 (b) That substantial and irreparable injury to complainant's property will follow;
 (c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;
 (d) That complainant has no adequate remedy at law; and
 (e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.
 29 U.S.C. § 101 provides:
 No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

In *Scott v. Moore*, 680 F.2d 979 (5th Cir.1982) (en banc), *rev'd sub nom United Bhd. of Carpenters & Joiners v. Scott,* —— U.S. ——, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), an employer and his nonunionized employees who were injured in a union-backed protest against the use of nonunion labor attempted to state a claim under 42 U.S.C. § 1985(3) (the Ku Klux Klan Act). This court's determination that the suit could be maintained was reversed by the Supreme Court, which held that § 1985(3) does not reach conspiracies motivated by an economic or commercial animus. Of significance here, however, is the fact that this court unanimously recognized, at least implicitly, that the Norris-LaGuardia Act could not itself be relied upon as a ground of jurisdiction if jurisdiction was lacking under § 1985(3).

The majority opinion in *Scott* noted that "[t]he Norris-LaGuardia Act was passed for the purpose of limiting the circumstances and conditions under which injunctive action could be taken against labor organizations in the context of a labor dispute." 680 F.2d at 985. Section 107 is thus not an affirmative grant of jurisdiction, but only an assurance that "[t]he Norris-LaGuardia Act *does not divest the district court of jurisdiction* to enjoin ... violent conduct ...." *Id.* at 986 (emphasis added).[3] The principal dissenting opinion agreed that "[t]he patent purpose of the Norris-La-Guardia Act was to limit stringently the jurisdiction and authority of federal courts to enjoin labor disputes." *Id.* at 1005 (Rubin & Williams, JJ., dissenting). Finally, Judge Garwood dissented separately on the ground that no action could be maintained under § 1985(3), and then noted that this determination made it unnecessary to consider any of the issues relating to Norris-LaGuardia, *id.* at 1022, 1025 (Garwood, J., dissenting); this consideration was pretermitted because Norris-LaGuardia could under no circumstances be itself a basis of federal jurisdiction.

Here, Norris-LaGuardia was the only jurisdictional basis invoked by the parties.[4] As Norris-LaGuardia is not a source of federal jurisdiction, the district court should have dismissed the complaint, and the grant of injunctive relief was erroneous. Our present task, therefore, is to determine what effect the invalidity of the injunction has on the civil contempt judgment against the NMU and the criminal contempt judgment against Garcia, Aguirre, and Garza.

## II

An unresolved challenge to its jurisdiction to enter an injunction does not end a court's authority to enforce that injunction by the contempt power. Thus, in *Carter v. United States*, 135 F.2d 858 (5th Cir.1943), we affirmed a contempt conviction stemming from violation of a restraining order which we had vacated in a companion decision. We held that even an injunction that is ultimately invalidated for lack of jurisdiction is, while the jurisdictional question is pending, a "lawful order," violation of which is punishable as contempt. This analysis was endorsed by the Supreme Court in *United States v. United Mine Workers of America*, 330 U.S. 258, 292, 67 S.Ct. 677, 695, 91 L.Ed. 884 (1947), *see also United States v. Shipp*, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319 (1906), and has been consistently applied in this and other circuits. *United States v. Hall*, 472 F.2d 261, 265 (5th Cir.1972); *Stewart v. Dunn*, 363 F.2d 591, 598–99 (5th Cir.1966); *Bigelow v. United States*, 267 F.2d 398 (9th Cir.), *cert.*

---

**3.** The majority opinion went on to conclude that the incident underlying the suit was not a "labor dispute," rendering the Norris-LaGuardia Act inapplicable and pretermitting consideration of whether the district court's failure to make the findings required by § 107 deprived it of jurisdiction to enter an injunction. 680 F.2d at 999–1001 & 986 n. 3. The nine dissenting judges to reach this issue, *id.* at 1005–09 (Rubin & Williams, JJ., dissenting), *id.* at 1033 (Ander-

son, J., dissenting), concluded that the Norris-LaGuardia Act did apply and that the district court's failure to make findings under § 107 rendered the injunction void.

**4.** The cross-complaint's reliance on pendant jurisdiction is of course nugatory if no proper jurisdictional basis had been previously established.

*denied,* 361 U.S. 852, 80 S.Ct. 113, 4 L.Ed.2d 91 (1959).

 Here, there was no challenge raised in the district court as to that court's jurisdiction to enter an injunction governing the conduct of strikers and workers at the Aquaslide plant site. Indeed, it was the NMU that first invoked the Norris-La-Guardia Act as a source of jurisdiction for the district court, and neither the union, the company, nor any of the individual strikers ever objected below that jurisdiction was lacking.[5] We think it apparent that the district court's power to punish violations of its order is at least as great when the contemnor has not challenged the court's jurisdiction as when jurisdiction has been challenged.[6] The simple rule is that a putatively lawful order enjoining specified conduct may be challenged but may not be disobeyed except at the risk of contempt sanctions.

 A distinction must be drawn, however, between civil contempt and criminal contempt. Civil contempt proceedings may be either coercive or compensatory. Coercive proceedings designed to impel compliance with the injunction necessarily cease when the injunction is invalidated. *See Carter v. United States*, 135 F.2d at 860–61. With respect to compensatory sanctions, the Supreme Court has held:

It does not follow, of course, that simply because a defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order. The right to remedial relief falls with an injunction which events prove was erroneously is-

sued, and *a fortiori* when the injunction or restraining order was beyond the jurisdiction of the court.

*United States v. United Mine Workers of America*, 330 U.S. at 294–95, 67 S.Ct. at 696–97 (citations omitted). As the award of a compensatory fine, costs, and attorneys' fees assessed against the NMU in favor of Aquaslide was of this character, it falls with the injunction. Accordingly, the judgment of contempt on the part of the NMU is reversed.

 The proceedings against Garcia, Aquirre, and Garza, on the other hand, were for criminal contempt. A criminal contempt proceeding is neither coercive nor compensatory; it is punitive. As we have noted above, a court has the power to punish as contempts acts in disobedience of an injunction which is ultimately determined to have been issued in error. Thus, the criminal contempt convictions of Garcia, Aguirre, and Garza are not affected by the invalidity of the underlying injunction.

## III

 Garcia, Aguirre, and Garza assert that the district court erred in denying them a jury trial on the criminal contempt charge. As the defendants were given pretrial assurance that no sentence in excess of six months imprisonment would be imposed, they had no right to jury trial under the Sixth Amendment. *Cheff v. Schnackenberg*, 384 U.S. 373, 380, 86 S.Ct. 1523, 1526, 16 L.Ed.2d 629 (1966); *Clark v. Boynton*, 362 F.2d 992, 999 & n. 17 (5th Cir.1966). Accordingly, Fed.R.Crim.P. 42(b) requires us to determine next whether any act of Congress grants these defendants the right to a trial by jury.

---

**5.** Because the absence of subject matter jurisdiction is a defect that cannot be waived, we consider this issue despite the fact that it was raised for the first time on appeal, and we would even have been obliged to raise it *sua sponte* had the appellants not urged it as a point of appeal.

**6.** This circumstance also satisfies us that our decision in *Brown v. Coumanis* was not so widely understood as to make the invocation of Norris-LaGuardia as a source of federal jurisdic-

tion frivolous. We noted in *Carter*, 135 F.2d at 861, that a frivolous claim of federal jurisdiction may be inadequate to supply jurisdiction even for the purpose of determining whether jurisdiction exists. Though *Brown v. Coumanis* unambiguously establishes that federal jurisdiction is lacking in this case, we cannot deem the claim of jurisdiction frivolous when the misconception was shared by experienced counsel on both sides and by the able trial judge.

■ The statute that governs here; 18 U.S.C. § 3692, creates a right to jury trial in criminal contempt cases arising out of labor disputes.[7] Section 3692 was originally enacted in 1932 as § 11 of the Norris-LaGuardia Act, at which time defendants in criminal contempt cases were not ordinarily afforded a right to a jury trial.[8] Although it might be argued that the right of jury trial granted by this statute should be presumed to be subject to the same petty offense exception attending all other criminal trials, we conclude that the statute's absolute terminology—guaranteeing a jury in "all" such labor-related cases—prohibits such a construction. In this respect, § 3692 may differ from its neighboring statute, 18 U.S.C. § 3691,[9] which provides a right of jury trial in contempt cases where the accused act is also a criminal offense.

Section 3691 was originally enacted as § 21 of the Clayton Act, and was intended to provide a jury trial to defendants charged with criminal contempt where the act constituting the contempt also consti-

tuted a criminal offense under state or federal law. This statute ended the anomolous circumstance that a defendant accused of some criminal act violative of an injunction or order might be denied a jury if he was charged with the contempt rather than with the substantive criminal offense.

Because the right to jury trial in a prosecution based on the substantive criminal offense would have been subject to a petty offense exception, *see District of Columbia v. Clawans,* 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937), it is reasonable to think that Congress meant the privilege granted by that statute to be of no greater scope; this view finds support in the statute's dictate that such trials "shall conform as near as may be to the practice in other criminal cases." In reviewing the statute, the Supreme Court noted:

> The only substantial difference between such a [contempt] proceeding as we have here, and a criminal prosecution by indictment or information is that in the latter the act complained of is the viola-

7. In pertinent part, § 3692 provides:
 In all cases of contempt arising under the laws of the United States governing the issuance of injunctions or restraining orders in any case involving or growing out of a labor dispute, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the contempt shall have been committed.

 In light of our holding that the district court lacked jurisdiction to issue the present injunction, an argument could be made that § 3692 does not apply because this case does not in fact "arise under" any law of the United States. We decline to place the defendants in the anomolous position of being worse off for having violated an injunction the district court had no jurisdiction to issue than they would be if they had violated a valid injunction. This case does grow out of a "labor dispute" as that term is defined in the Norris-LaGuardia Act, 29 U.S.C. § 113(c), and the statute under which the district court putatively exercised jurisdiction is one "governing the issuance of injunctions" in such cases. If this injunction was sufficiently extant that violations thereof may be punished as a contempt, we conclude that it was also sufficiently extant that the contemnor should enjoy the rights afforded one who disobeys a wholly valid injunction.

8. A Sixth Amendment right to jury trial in nonpetty criminal contempt cases was not recognized until the 1960's. *See Cheff v. Schnacken-*

berg; *United States v. Barnett,* 376 U.S. 681, 694–95 n. 12, 84 S.Ct. 984, 991–92 n. 12, 12 L.Ed.2d 23 (1964). Before that time, jury trial was afforded in contempt cases only if provided by act of Congress; Congress can, of course, require a jury trial even where it is not constitutionally guaranteed. Fed.R.Crim.P. 42(b); *Michaelson v. United States,* 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162 (1924).

9. In pertinent part, § 3691 provides:
 Whenever a contempt charged shall consist in willful disobedience of any lawful writ, process, order, rule, decree, or command of any district court of the United States by doing or omitting any act or thing in violation thereof, and the act or thing done or omitted also constitutes a criminal offense under any Act of Congress, or under the laws of any state in which it was done or omitted, the accused, upon demand therefor, shall be entitled to trial by a jury, which shall conform as near as may be to the practice in other criminal cases.

 Section 3691 does not apply here because the acts for which the defendants were cited for contempt—picketing in a manner that obstructed ingress to and egress from Aquaslide's plant, and failing to limit the number of persons engaged in picketing—are not criminal acts.

tion of a law and in the former the violation of a decree. In the case of the latter, the accused has a constitutional right of trial by jury; while in the former he has not."

*Michaelson v. United States*, 266 U.S. 42, 67, 45 S.Ct. 18, 20, 69 L.Ed. 162 (1924). The statute was described as an "extension of this constitutional right to a class of contempts," *id.*, but the constitutional right involved was subject to a petty offense exception.

The contempt provisions of the Clayton Act were eventually recodified as part of the criminal code. 18 U.S.C. §§ 401, 402, 3691. The revisor's note to § 3691 observes that certain portions of the old statute were superseded by Fed.R.Crim.P. 23 & 42. Significantly, the Advisory Committee notes to the general jury trial provision in rule 23 expressly observe that there is no right to a jury trial for petty offenses.

In light of the above, we will assume—though we are not here called upon to decide—that there is a petty offense exception to the right of jury trial granted under § 3691. Section 3692, however, has different origins and different language, and we are convinced that the two statutes diverge on this point.

Section 3692's statutory predecessor was to some degree modeled on the statutory predecessor of § 3691. However, the observation that § 11 of the Norris-LaGuardia Act was a "similar provision" to § 21 of the Clayton Act, H.Rep. No. 669, 72d Cong. 1st Sess., at 10 (1932), signified only that the proposed statute represented no substantially greater intrusion on the courts' power to punish contempts than did the existing statute, which had already been held constitutional by the Supreme Court in *Michaelson v. United States*. Moreover, § 3692 and its predecessor never contained a provision comparable to § 3691's require-

ment that trials under the latter statute "shall conform as near as may be to the practice in other criminal cases." As the Norris-LaGuardia Act was designed to limit the role of the judiciary in resolving labor disputes, a ban on summary treatment of all criminal citations for contempts not committed in the presence of the court would accord with the Congressional purpose. We hold accordingly that the right to jury trial under § 3692 is not subject to exception because the penalty imposed in a particular case is petty.

The district court cited *Muniz v. Hoffman*, 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975), to justify denial of a jury trial, but that case holds only that an action brought by the NLRB in furtherance of the public interest is not a "labor dispute," and that § 3692 accordingly does not apply in such cases. Aquaslide relies also on our decision in *United States v. Martinez*, 686 F.2d 334 (5th Cir.1982), and the Ninth Circuit's decision in *United States v. Robinson*, 449 F.2d 925 (9th Cir.1971), both of which denied jury trials to federal air traffic controllers engaged in an illegal "strike" against the United States. These cases, however, held only that such a conflict between the government and its employees is not a "labor dispute" within the purview of the Norris-LaGuardia Act; accordingly, § 3692 was inapplicable.[10] *See United States v. United Mine Workers*, 330 U.S. 258, 269–84, 67 S.Ct. 677, 684–91, 91 L.Ed. 884 (1947).

In sum, we hold that § 3692, where applicable, guarantees an accused contemnor a right to trial by jury regardless of the sentence to be imposed. As Garcia, Aguirre, and Garza were denied the jury trial to which they were entitled, their convictions of criminal contempt must be reversed.

REVERSED.

**10.** Our holding that there is no petty offense exception to § 3692 accords with an underlying assumption in *Martinez* and *Robinson* and other similar cases such as *United States v. Partin*, 524 F.2d 992 (5th Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1493, 47 L.Ed.2d 753 (1976). In each of these cases the defendants were sen-

tenced to no more than six months imprisonment and a $500 fine. Therefore, if § 3692 was subject to a petty offense exception there would have been no need to consider at length the statute's asserted applicability, for no right of the defendants' would have been infringed in any event.